UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Alan Clarke, | Case No.: 2:20-cv-00160-JAD-BNW |
| Plaintiff | |
| v. | **Order Denying Motions to Dismiss for Lack of Personal Jurisdiction** |
| Dutton Harris & Company, PLLC and Bob W. Dutton, | [ECF Nos. 14, 28] |
| Defendants | |

After Valda Clarke passed away, her son Alan reached out to her accountant, Bob Dutton, and his accounting firm Dutton Harris & Company, PLLC, to do some accounting work and prepare the tax returns for his mom's estate and related trusts. But according to Clarke, Dutton Harris flubbed the valuation and tax returns, overlooking key assets and relying on old information, which left Clarke entangled in a lawsuit with a beneficiary of the estate. So Clarke sued Dutton and the firm to indemnify him for any losses that he may incur in that other dispute. The defendants move to dismiss, arguing that this court lacks personal jurisdiction over them. Though most of the defendants' work takes place out of state, their contacts to Nevada are sufficient, so I deny their motions.

## Background[1]

Valda Clarke met Dutton through a mutual Nevada connection near the start of the millennium.[2] She then hired Dutton's Texas-based accounting firm to prepare her financial

---

[1] This is merely a summary of Clarke's allegations and not findings of fact.
[2] ECF Nos. 18-1 at ¶ 5 (Clarke Declaration); 28-1 at ¶ 8 (Dutton Declaration).

statements and tax returns, which it did for more than a decade.[3] Though the firm does work for its clients exclusively from Texas, it maintains clients elsewhere—including nearly ten in Nevada.[4] For some of the time that Dutton worked for Valda, he served as the vice president of one of Valda's Nevada corporations[5] and, near the end of Valda's life, Dutton was involved in her estate planning.[6] After Valda passed away, Alan Clarke hired the defendants to prepare the estate and income tax returns for Valda's estate and various trusts, and to compile information about the assets and equity of one of Valda's corporations in the estate.[7] Clarke claims that the defendants omitted key assets in preparing the tax returns, which led one of the estate's beneficiaries to sue Clarke.[8] Hoping to lessen the blow of that lawsuit, Clarke now seeks indemnification from Dutton and the firm and sues them for malpractice, breach of contract, and negligence.

## Discussion

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[9] and Federal Rule 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction. To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[10] Because Nevada's long-arm statute reaches the

---

[3] ECF No. 1 at ¶ 20 (complaint).
[4] ECF Nos. 14-1 at ¶¶ 5 (Erdwurm Declaration), 9; 28-1 at ¶¶ 10, 11.
[5] ECF Nos. 18-1 at ¶ 7; 28-1 at ¶ 7.
[6] ECF No. 18-1 at ¶ 11.
[7] ECF Nos. 18-4 at 2 (engagement letter); 1 at ¶ 22.
[8] ECF No. 1 at ¶ 26.
[9] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).
[10] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

constitutional ceiling,[11] the question here is whether jurisdiction "comports with the limits imposed by federal due process."[12] A court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[13]

There are two forms of personal jurisdiction: general and specific.[14] Clarke argues that this court can exercise both forms over the defendants because of their years of work for Nevada clients and Dutton's other business ventures in the state. I consider each basis for the exercise of jurisdiction and conclude that this court, though unable to exercise general jurisdiction over the defendants, may exercise specific jurisdiction over them.

## I. This court lacks general jurisdiction over the defendants.

General jurisdiction is far-reaching and permits a defendant to be sued in the forum for conduct "anywhere in the world."[15] "But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction."[16] So "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere" other than an individual's domicile or a corporation's place of incorporation and principal place of business.[17] This standard is "exacting" and requires a nonresident defendant to "engage in 'continuous and

---

[11] Nev. Rev. Stat. § 14.065.

[12] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[13] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[14] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[15] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

[16] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ____ (2021), No. 19-368, slip op. at 5 (2021) (citation omitted).

[17] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014)).

systematic general business contacts,'" "approximat[ing] physical presence in the forum state," that are "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."[18]

Clarke fails to make the "exceptional case" that nonresidents Dutton and Dutton Harris are "essentially at home" in Nevada.[19] While the firm worked for Valda for years and has other clients in the state, merely "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."[20] After considering the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets"[21] of Dutton Harris's Nevada operations, I cannot find that general jurisdiction over the firm is appropriate. As the firm points out and Clarke does not dispute, Dutton Harris does not have a single Nevada employee, its only office is in Texas, and it has less than a dozen clients who live in Nevada.[22]

As for Dutton, Clarke contends that his participation in two Nevada businesses plus his work for Valda is sufficient to assert general jurisdiction over him. Far from showing that Dutton is at home in Nevada, however, these facts merely demonstrate that Dutton has *some* connection to the state. But he's never lived in the state, nor is he licensed here. And at the time of this dispute, Dutton was no longer an officer of the Nevada corporation that fell under the

---

[18] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (citations omitted).

[19] *Daimler AG*, 571 U.S. at 139 n.19.

[20] *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

[21] *Mavrix Photo, Inc.*, 647 F.3d at 1224 (internal quotation marks and citations omitted).

[22] ECF No. 14-1 at ¶¶ 5, 6, 9.

estate.[23]  Clarke offers no precedent that would suggest that an individual's discontinued business activities in a forum permits that forum's courts to exercise general jurisdiction over him forever, and I decline to do so here.

## II.     This court can exercise specific jurisdiction over the defendants.

Having determined that neither defendant is subject to this court's general personal jurisdiction, I turn to whether this court has specific jurisdiction over them.  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[24]  This means that "the plaintiff cannot be the only link between the defendant and the forum,"[25] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."[26]

Courts in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[27]  In a case like Clarke's, which sounds in contract and negligence, the plaintiff bears the burden of satisfying the first two prongs by showing that (1) the defendant "purposefully avail[ed] himself of the privileges of conducting activities in the forum" and (2) the claim "arises out of or relates to the defendants' forum-related activities."[28]  If he does, the

---

[23] ECF No. 28-1 at ¶ 7.

[24] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[25] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[26] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[27] *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

[28] *Axiom Foods, Inc. v. Acerchem Int'l., Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018).  This lawsuit centers around the defendants' alleged

burden then shifts to the defendant to "present a compelling case" that jurisdiction would be unreasonable.[29] An insufficient showing at any prong requires dismissal.[30]

### A. The defendants purposefully availed themselves of conducting business in the forum.

Under a purposeful-availment analysis, the plaintiff must show that the defendant "performed some type of affirmative conduct [that] allows or promotes the transaction of business within the forum state."[31] This does not require a defendant to have a physical presence in the forum.[32] Instead, the focus is on whether the defendant's "business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state."[33]

In the Ninth Circuit, incidental or fleeting contacts with a forum will only establish purposeful availment when the defendant takes some additional action in the state. In *Boschetto v. Hansing*, for example, the Ninth Circuit grappled with whether a car sale—which was conducted online and the car was then delivered to the forum state—could sustain specific jurisdiction.[34] Determining that it could not, the *Boschetto* court explained that because the

---

negligence and ultimate breach of contract in their tax-preparation services. So the defendants' reliance on the purposeful-direction test is misplaced. *See Schwarzenegger*, 374 F.3d at 803.

[29] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[30] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[31] *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

[32] *Burger King*, 471 U.S. at 476.

[33] *Travelers Health Ass'n v. Virginia, ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950).

[34] *Boschetto*, 539 F.3d at 1017.

purchase contract "did not create any ongoing obligations with [the plaintiff] in [the forum]," the defendant's "one-shot affair" with the forum was incidental and, thus, insufficient to establish purposeful availment.[35] In essence, he had not taken advantage of the forum's benefits and protections.[36] But in *T.M. Hylwa, M.D. v. Palka*,[37] the Ninth Circuit held that an out-of-state accountant was subject to jurisdiction in the forum where he provided "year-round services" for a forum business and traveled there at least once a year to "work on [the plaintiff's] books."[38] Because the accountant's work for the forum resident involved more than just attenuated services—he was, after all, an employee under contract who received a pension—he could reasonably expect to be haled into court in California for his actions there.[39] And even though the accountant's work initially made its way to the forum only because the plaintiff moved there, his decision to continue offering services in the forum (though performed mostly from another state), was sufficient to tie the accountant to the forum.[40]

Clarke argues that four contacts establish the defendants' purposeful availment in Nevada: (1) the accounting and tax work that the defendants did for Valda and her estate, (2) the defendants' phone calls and emails to parties in the forum, (3) the defendants' ten Nevada clients, and (4) Dutton's separate business affairs in the state. Admitting that the defendants have not advertised in Nevada nor established concrete business entities in the state, Clarke alleges that the defendants were introduced to Nevada contacts who sought out their accounting

---

[35] *Id.*

[36] *Id.*

[37] *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir. 1987).

[38] *Sher*, 911 F.2d at 1363 n.3 (9th Cir. 1990) (citing *Hylwa*, 823 F.2d at 314–15).

[39] *Id.*

[40] *T.M. Hylwa*, 823 F.2d at 314–15.

7

and tax-preparation services. And based on the defendants' professional and personal relationship with Valda and their early involvement in her estate planning, Clarke claims that he reached out to the defendants to evaluate one of the estate's assets and to do related tax work.

While this case presents a close call, I find that Dutton and his firm have purposefully availed themselves of the benefits of the forum. True, Clarke's allegations do not rise to the level of the pension-invoking, long-term contract-based contacts that supported the exercise of jurisdiction in *T.M. Hylwa*, but they also do not fall to the level of an incidental, one-shot deal dismissed by the *Boschetto* court. The defendants engaged in a long-term business relationship with Nevada-based Valda, doing her taxes multiple times over a decade-long period, alongside offering her "tax advice."[41] They also continue to maintain business relationships in Nevada—by their own admission, they have "approximately ten clients currently residing in Nevada."[42] So even if the defendants' contacts with Nevada began solely because that's where the customers lived, the defendants' decision to maintain those clients and continue offering services for them created an ongoing relationship with the forum. And as part of those relationships, the defendants have sent numerous emails and called several Nevada contacts.[43]

Each of these individual acts might be independently insufficient to support the exercise of specific jurisdiction.[44] But taken together and construed in plaintiff's favor, they demonstrate that the defendants' Nevada-based conduct wasn't the product of "random" or "isolated" actions; they were the result of the defendants' choice to take advantage of Nevada's laws and do

---

[41] ECF No 28-1 at 10.
[42] ECF No. 14-1 at ¶ 9.
[43] ECF No. 18-1 at ¶ 9.
[44] *See Sher*, 911 F.2d at 1363.

8

business here.[45]  So I find that Clarke has satisfied the first prong of the Ninth Circuit's specific-jurisdiction test.

### B. Clarke's claims arise from or relate to the defendants' forum conduct.

To meet the second specific-jurisdiction prong, "the *suit* must 'aris[e] out of or relate[e] to the defendant's contacts with the *forum*."[46]  This means that "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[47]  Historically, courts in the Ninth Circuit exclusively "rel[ied] on a 'but for' test to determine whether a particular claim arises out of forum-related activities."[48]  But the Supreme Court appears to have recently done away with that approach in *Ford Motor Co. v. Montana Eighth Judicial District Court*.[49]  While "[t]his does not mean anything goes," courts must give real consideration to claims that "relate to" the defendant's forum contacts.[50]

---

[45] *Ford*, slip op. at 6.  Clarke also argues that Dutton's officer role in a couple Nevada businesses demonstrates that jurisdiction over him is reasonable.  I do not rely on that connection to establish jurisdiction for two reasons.  First, Clarke offers no facts that Dutton's independent business ventures are in anyway attributable to Dutton Harris.  Second, and most importantly, there are no facts to show that Clarke's claim arises from or relates to Dutton's separate business activities.

[46] *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG*, 571 U.S. at 126) (internal quotation marks omitted) (emphasis and alteration in original).

[47] *Id.* (citation omitted).

[48] *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

[49] *Ford*, slip op. at 8–18, *id.* at 2–3 (Alito, J. concurring) ("Ford, however, asks us to adopt an unprecedented rule under which a defendant's contacts with the forum State must be proven to have been a but-for cause of the tort plaintiff's injury.  The Court properly rejects that argument . . . .").

[50] *Id.* at 8 (majority opinion).

9

The defendants do not dispute that Clarke's claims arise from their Nevada services for the estate. Nor do they dispute that Clarke's claims also relate to the defendants' overall practice in Nevada under which they offer the same services. Instead, the defendants argue only that Dutton's work for the Nevada companies, and the phone calls and emails that the defendants sent in connection with Valda's estate, are distinct from Clarke's claims. While Clarke offers no facts to show that Dutton's participation in those companies has anything to do with his and his business's tax and accounting services, the calls and emails were associated with the defendants' tax and accounting services in Nevada. These acts do not merely relate to any of the defendants' Nevada conduct—they directly relate to the accounting and tax-preparation services that they provide in the forum that underlie this case. And even if I were to ignore these contacts, the defendants' remaining contacts, which go undisputed, are sufficiently related to this suit to find that jurisdiction is appropriate over these defendants.

### C.     Exercising jurisdiction over the defendants is reasonable.

Once a plaintiff has established a defendant's minimum contacts with a forum, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[51] That burden is hefty[52] and requires the defendant to show that jurisdiction is so unreasonable that it would "offend traditional notions of fair play and substantial justice."[53] The Ninth Circuit directs courts to consider seven factors in making this determination: (1) the "extent of the defendant[s'] purposeful injection in the forum state's affairs;" (2) the "burden" of defending in the forum; (3) the "extent," if any, of "conflict with the

---

[51] *Burger King*, 471 U.S. 462, 477 (1985).
[52] *Dole Food*, 303 F.3d at 1114.
[53] *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks and citations omitted).

sovereignty of the defendant's state;" (4) the forum's "interest in adjudicating the dispute;" (5) the most efficient redress of the controversy; (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief," and (7) the "existence of an alternative forum."[54]

The second factor is the only one that leans wholly in the defendants' favor. As the parties agree, the defendants do not have a physical presence in the forum. But while there may be a burden on the defendants to litigate in Nevada, "it would not be impossible."[55] As the Ninth Circuit has explained, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another [location]."[56] This is particularly true here—this case has been going on for more than a year in Nevada and much of the discovery from the underlying beneficiary lawsuit was already disclosed. So while the second factor favors the defendants, it does not show that the defendants would be so inconvenienced that jurisdiction is unreasonable.

Of the remaining factors, only the first factor tilts somewhat in the defendants' favor, while the rest favor Clarke or neither party. Under the first factor, a finding of purposeful availment does not put the issue of purposeful injection beyond dispute.[57] While the defendants' contacts here are sufficient to meet the purposeful-availment test, I am cognizant that the firm has only about ten clients in the state and does most of its work from Texas, which mitigates the first factor.[58] But as I previously noted, once the defendants established relationships with

---

[54] *Dole Food*, 303 F.3d at 1114.

[55] *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

[56] *Id.*

[57] *Dole Food*, 303 F.3d at 1114 ("[T]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction.").

[58] *Id.* at 1488.

11

Nevada clients, they continued to service those clients in Nevada with no signs of stopping, effectively preventing this factor from tipping entirely in their favor.

The fourth and sixth factors favor Clarke because although Clarke admits that he is personally not a Nevada resident, the dispute centers around the work done for the Nevada estate. Nevada has a strong interest in the mishandling of an estate within its jurisdiction, so the fourth factor favors Clarke.[59] And although the sixth factor "is not of paramount importance," I still consider it.[60] Because Clarke lives in California, he contends that litigating in Nevada is far more convenient than traveling to Texas where the defendants reside.[61] So the sixth factor, as expected, favors Clarke.

Finally, the third and fifth factors do not favor either party. For the sovereignty factor, courts consider the "competing sovereign interests in regulating [the defendants'] behavior."[62] This factor is not dispositive and as the Ninth Circuit has explained, "litigation against an" international party "creates a higher jurisdictional barrier than litigation against a citizen from a sister state."[63] The defendants here are not international defendants, they are residents of Texas. So while Texas may maintain an interest in regulating its citizens' conduct, the defendants have not pointed to a reason why exercising jurisdiction here conflicts Texas's sovereignty in regulating its citizens' conduct. Next, when considering which forum is the most efficient, courts generally assess the location of the witnesses and evidence.[64] The defendants argue that

---

[59] *See Freestream Aircraft*, 905 F.3d at 608.
[60] *Dole Food*, 303 F.3d at 1116.
[61] ECF No. 18 at 10.
[62] *Dole Food*, 303 F.3d at 1114.
[63] *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).
[64] *Core-Vent Corp.*, 11 F.3d at 1489.

because they did their work for the estate in Texas, their witnesses and evidence will be there. But while the parties agree that most witnesses will not come from Nevada, the witnesses are also not solely in Texas. And as Clarke points out, some of the estate documents are still in Nevada. So this factor is largely a wash and does not favor either party.[65]

Balancing these factors isn't a numbers game and depends on the defendant to carry the burden of "overcom[ing] the strong presumption" that jurisdiction is reasonable.[66] For example, the Ninth Circuit has upheld an exercise of jurisdiction where "only two of the reasonableness factors favored the plaintiff."[67] Here, only the second factor definitively favors the defendants. And although some lie closer to the defendants' side, none of them overwhelmingly shows that jurisdiction is unreasonable. Thus, I find that the defendants have failed to meet their burden of presenting a compelling case that jurisdiction is unreasonable. And because the defendants have not made the showing that Nevada is an unreasonable forum, I need not consider whether Texas is an adequate alternate forum as they suggest.[68]

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motions to dismiss [**ECF No. 14**] and [**ECF No. 28**] are **DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 31, 2021

---

[65] See Dole Food, 303 F.3d at 1116.

[66] Id. at 1117.

[67] Id.

[68] See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1080 (9th Cir. 2011) ("Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable.").