# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Alan Clarke, | Case No.: 2:20-cv-00160-JAD-BNW |
| Plaintiff | |
| v. | **Order Denying Motions for Summary Judgment and to Strike** |
| Dutton Harris & Company, PLLC and Bob W. Dutton, | [ECF Nos. 52, 53] |
| Defendants | |

Following his mother's death, Alan Clarke enlisted her accountant, Bob W. Dutton, and his firm, Dutton Harris & Company, PLLC, to prepare her estate's taxes. But according to Clarke, the firm made several material mistakes on the tax returns and related documents, leaving him embroiled in a lawsuit with his brother, one of the estate's beneficiaries. So Clarke sued Dutton and the firm to indemnify him for his losses in that dispute, adding claims for accounting malpractice, negligence, and breach of contract. Last year, I denied defendants' motion to dismiss for want of personal jurisdiction, finding that they had sufficient contacts with the State of Nevada for this court to exercise specific personal jurisdiction over them. Defendants now move for summary judgment on Clarke's malpractice claim and to preemptively strike the testimony of his expert witness. Because I find that there exist material factual disputes about that claim and that there is no reason to preclude the expert witness from testifying, I deny both motions. This case proceeds to trial. But first I refer it to the magistrate judge for a mandatory settlement conference.

**Discussion**

**I.     Defendants' motion to strike Clarke's expert witness [ECF No. 52]**

With a motion to strike, defendants seek to preclude expert witness John Amundson from testifying at trial, arguing that he "wholly and completely failed" (1) to "quantify" Clarke's damages or (2) provide a "methodology to explain how he arrived at his opinions that" Clarke suffered damages.[1]  Clarke responds that Amundson was "not retained to provide an ultimate opinion" on damages; rather, his opinions have revolved around "the applicable standard of care, defendants' violation[s] of" it, and the individual amounts and "types of damages caused" by those violations.[2]  Because I find defendants' objections meritless and Amundson qualified to serve as an expert witness, I deny the motion.

Federal Rule of Evidence (FRE) 702 governs the admissibility of Amundson's opinions.[3] The analysis under FRE 702 is "flexible" and district courts are instructed to apply the rule "with a liberal thrust favoring admission."[4]  The proponent of the expert's testimony must establish that it's admissible and, if it is, even "shaky" evidence shouldn't be excluded—rather, it should be "attacked by cross examination, contrary evidence, and attention to the burden of proof."[5]

So a witness "who is qualified as an expert by knowledge, skill, experience, training, *or education* may testify in the form of an opinion or otherwise if" (a) "the expert's scientific, technical, or other specialized knowledge will help" the jury "understand the evidence or

---

[1] ECF No. 52 at ¶ 2.

[2] ECF No. 55 at 6.

[3] Fed. R. Evid. 702.

[4] *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (cleaned up).

[5] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*, 530 F.3d 899, 904 (9th Cir. 2008).

1   determine a fact in issue"; (b) his "testimony is based on sufficient facts or data"; (c) "the

2   testimony is the product of reliable principles and methods"; and (d) "the expert has reliably

3   applied the principles and methods to the facts of the case."[6]  The touchstones of the expert-

4   testimony inquiry are thus relevancy and reliability.  "Expert opinion testimony is relevant if the

5   knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the

6   knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

7   discipline."[7]

8          Defendants don't contest the relevance of Amundson's testimony,[8] so I only consider its

9   reliability.  Their first challenge is premised on Amundson's apparent failure to calculate and

10  present the total amount of damages Clarke suffered because of defendants' alleged malpractice.[9]

11  They argue that Amundson should be precluded from testifying about damages at all because he

12  didn't report the result of one calculation[10]—a calculation Clarke didn't hire him to conduct.[11]

13  This objection is both premature and without merit.  There is no indication that Amundson will

14  testify to the total amount of damages; indeed, every indication points to the opposite.[12]  And

15  Amundson has calculated several damage amounts relating to the various mistakes defendants

16  allegedly made in Clarke's mother's estate's tax-return filings.[13]  An experienced accountant like

17

---

18  [6] Fed. R. Evid. 702 (emphasis added).

19  [7] *Primiano*, 598 F.3d at 565 (cleaned up).

20  [8] *See generally* ECF No. 52.

    [9] *Id.* at ¶¶ 12–16.

21  [10] *Id.* at ¶ 14.

22  [11] ECF No. 55 at 7.

    [12] Defendants appear to suggest that Amundson might "later fabricate[]" conclusions about the

23  total amount of damages, ECF No. 52 at ¶ 18, but there is no evidence to support that prediction.

    [13] *See, e.g.*, ECF No. 53-5 at 8.

1  Amundson should be able to testify to the total amount if that value is wholly based on the

2  existing calculations made in his report and deposition.

3          Defendants' second and final challenge to Amundson's testimony too fails.  They argue

4  that he should be precluded from testifying because he did not disclose his "methodology" for

5  arriving at his conclusions.[14]  Relying primarily on cases involving scientific inquiries,[15] they

6  argue that I "*must* determine" whether Amundson's testimony (1) is "based on scientifically

7  valid principles" and methods "that have been subjected to normal scientific scrutiny through

8  peer review and publication" or (2) incorporates a valid, precisely articulated, and scientific-

9  method-based theory that utilizes "an objective source, such as a learned treatise, a publish [sic]

10  article in a reputable scientific journal or the like."[16]

11          But an expert witness needn't be a scientist or conduct traditionally scientific analysis.

12  The reliability of expert evidence can "depend[] heavily on the knowledge and experience of the

13  expert, rather than the methodology or theory behind it."[17]  Neither Clarke nor Amundson has

14  _____

[14] *Id.* at ¶ 10.

[15] In their reply brief, defendants cite to an unpublished Ninth Circuit decision in which the court found that a district court did not abuse its discretion by excluding a certified public accountant's (CPA) testimony when he was not properly disclosed as an expert, "did not review any ledger or source documents," prepare an expert report, or speak to any accountants, and only interviewed one person and reviewed only the filed tax returns.  *See United States v. Asiru*, 222 F. App'x 584, 587 (9th Cir. 2007) (cleaned up); *see also* ECF No. 57 at 6.  The decision to admit an expert's testimony is within a district court's considered discretion.  *See Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019).  Although Amundson's document review also only focused on the filed tax forms, he considered their various iterations and amendments, noting the mistakes made on each draft and the confusion they caused, as well as glaring mistakes in contravention of clear instructions from the Internal Revenue Service.  Further, he has been properly disclosed as an expert and has presented the parties with two expert reports.  Thus, to the extent that *Asiru* is at all relevant to this case, it is both distinguishable and not contrary to my decision here.

[16] *Id.* at ¶ 11.

[17] *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).

claimed that the latter's expert testimony is scientific evidence that went through scientific-method-based analyses.[18]  But he did conduct an analysis in accord with his expertise as a CPA, his 40 years of experience, and the relevant tax principles.[19]  For each of his conclusions about defendants' alleged mistakes, Amundson provided the basis for his opinion, including the applicable standard practice, the mistake and any compounding factors, and how and by how much it damaged Clarke.[20]  This is enough for his testimony and methods to be considered reliable under FRE 702.  I thus deny the motion to strike in its entirety.

## II.    Defendants' motion for partial summary judgment [ECF No. 53]

### A.    Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[22]  A fact is material if it could affect the outcome of the case.[23]

---

[18] ECF No. 55; ECF No. 52-5 (Amundson's expert reports).

[19] *See* ECF No. 52-5; ECF No. 55-1 (Amundson deposition tr.) at 4–6, 17.

[20] *See, e.g.*, ECF No. 55-1 at 10–12, 19–20; ECF No. 52-5 at 8–9.

[21] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure (FRCP) 56.  *See* Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[23] *Id.* at 249.

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[24]  So the parties' burdens on an issue at trial are critical. When the party moving for summary judgment would bear the burden of proof, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[25]  If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[26]  But when the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[27]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[28]

To succeed on a professional-malpractice claim in Nevada, the plaintiff must establish: (1) "the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise"; (2) breach of that duty; (3) proximate causation; and (4) actual damages.[29]  Defendants assert that they are entitled to summary judgment on Clarke's malpractice claim because he has failed to establish that they breached their duty as accountants by including "the Country Lane note" in Clarke's mother's estate, and because he

---

[24] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[25] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[26] *Id.*

[27] *Celotex*, 477 U.S. at 323.

[28] *Id.* at 322.

[29] *See Sorenson v. Pavlikowski*, 581 P.2d 851, 853 (Nev. 1978).

has not shown that they proximately caused him actual damages.  Because genuine disputes of

material fact exist as to breach, and defendants failed to comply with the requirements for a

motion for summary judgment under the Federal Rules of Civil Procedure (FRCP) and this

district's local rules as to their second and third bases, I deny their motion.

**B.      There exist genuine issues of material fact about the Country Lane note.**

Under the Treasury Regulation governing the valuation of notes held by estates, "[t]he

fair market value of notes, secured or unsecured, is presumed to be the amount of unpaid

principal, plus interest accrued to the date of death, unless the executor establishes that the value

is lower or that the notes are worthless."[30]  Depending on which party one asks, the Country

Lane note is a $1,050,000 loan that either (1) Clarke's brother personally owed their mother or

(2) the now-defunct Country Lane Town Center development owed Clarke's brother's now-

dissolved JRAC Corporation.[31]  Clarke argues that the "face value" of the note was improperly

included in the estate's assets, ballooning its estate-tax liabilities, because the note was

worthless, did not belong to the estate, and should've been written off.  His argument relies on

Amundson's report and deposition, in which the expert found that (1) there is no written

promissory note, (2) the obligation appeared on the corporation's tax returns for nine years (3)

without a single payment, and (4) thus had accrued hundreds of thousands of dollars in interest.[32]

Defendants disagree, relying on their own expert, Jason Freeman, who opined that the note was

not worthless and was properly included on the estate's tax returns.[33]  To support their

---

[30] 26 C.F.R. §§ 20.2031-4.

[31] ECF No. 53 at ¶ 8; ECF No. 54-1 at 25–26; ECF No. 53-10 at 4–6; ECF No. 56 at 7, 10; ECF No. 56-1 at 34.

[32] ECF No. 54-1 at 17, 25–26; s*ee generally* ECF No. 52-5.

[33] ECF No. 56-1 at 12, 18, 38–39, 62, 64.

contention, defendants cite to *Hoffman v. Commissioner of Internal Revenue*, a memorandum

decision of the Tax Court.[34]  In *Hoffman*, the Tax Court rejected the testimony of an estate's

expert who'd testified that two promissory notes held by an estate were worthless.[35]  But the

parties dispute whether a note even exists in this case and whether the loan was a personal debt

owed to Clarke's mother, and they've hired experts with divergent opinions on a central issue of

Clarke's malpractice claim—whether the Country Lane note is worthless.  These are all issues of

fact material to the question of breach that a jury must decide, and they preclude summary

judgment.


### C.      Defendants have not shown that they're entitled to judgment as a matter of law as to proximate cause or damages.

FRCP 56 requires a summary-judgment movant to "identify[] each claim or defense . . .

on which summary judgment is sought" and show that no genuine disputes of material fact

exist.[36]  To show that a fact "cannot be . . . genuinely disputed," the movant "*must* support the

assertion" by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials."[37]  And this district's local rules require a "statement setting forth each fact material to

the disposition of the motion" with proper citation to the record evidence.[38]

---

[34] *See Hoffman v. Comm'r*, 81 T.C.M. (CCH) 1588 (T.C. 2001); *see also Dunaway v. Comm'r*, 124 T.C. 80, 87 (2005) (disregarding memorandum decisions of the Tax Court because they are limited to their facts and "not regarded as binding precedent").

[35] *See Hoffman*, 81 T.C.M. at 1588.

[36] Fed. R. Civ. P. 56(a).

[37] *Id.* at 56(c)(1) (emphasis added).

[38] L.R. 56-1.

Defendants spend most of their motion's two pages dedicated to the proximate-causation and damages elements rehashing their motion to strike Amundson's testimony.[39]  They present no argument and no evidence beyond a conclusory statement that Clarke "does not have enough evidence of the essential element of damages" and a quote from Amundson noting that he didn't make a total damage calculation.[40]  This submission is insufficient to meet the initial burden on summary judgment.

### Conclusion

IT IS THEREFORE ORDERED that defendants Dutton Harris & Company, PLLC and Bob W. Dutton's motions to strike **[ECF No. 52]** and for partial summary judgment **[ECF No. 53] are DENIED**.  This case proceeds to trial.

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
March 10, 2022

---

[39] ECF No. 53 at ¶¶ 19–22.

[40] *Id.* at ¶¶ 19–20.